[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-13576

_____

SAMUEL DACOSTAGOMEZ-AGUILAR,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A097-344-614

_____

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

GRANT, Circuit Judge:

Congress has established specific administrative proceedings for deciding whether to remove a person who lacks the right to remain in this country. Skipping those proceedings is no way to avoid removal. To prevent such attempts to circumvent the immigration process, Congress allows immigration judges to order removal "in absentia" after the failure to attend a hearing—so long as the government gave notice of the hearing beforehand.

The question we consider is exactly what kind of notice deficiencies must be shown before an in absentia removal order can be challenged. Immigration law is famously complicated, but the answer here turns out to be rather simple. The notice required to render an in absentia removal lawful is the notice for the particular hearing that was missed. And to have a chance to reopen removal proceedings—and thus challenge an in absentia removal order—a movant must show that he failed to receive the notice for the hearing at which he was ordered removed. Contrary to the petitioner's argument, a defect in an earlier notice does not satisfy this burden. We therefore deny the petition for review.

## I.

In October 2003, 17-year-old Samuel Dacostagomez—along with his mother, little sister, and two young cousins—crawled under a border fence that separated Mexico from Arizona. But

they did not make it far; United States Border Patrol agents soon apprehended them walking north along a highway. That same day they handed Dacostagomez a notice to appear. The notice charged him as removable for being present in the country without admission or parole, and ordered him to appear for removal proceedings before the Phoenix Immigration Court at a date and time "to be set." *See* 8 U.S.C. § 1182(a)(6)(A)(i).

Agents also informed Dacostagomez's mother that she needed to appear before an immigration court "in a year" and "bring all of the children" with her. When asked where they would be until then, she told them that she and the children would live with her sister in Rock Springs, Georgia. She gave the agents her sister's address, and the family made its way to Georgia.

Within two months, the Phoenix Immigration Court sent a notice to the Rock Springs address setting Dacostagomez's hearing for November 2004—which would be a little more than a year after his entry into the United States. But nine months before the hearing, Dacostagomez's family left Rock Springs for his grandmother's home in Dalton, Georgia. No one informed the immigration court about the move. Three months later, they left the grandmother's home too—and again failed to tell the immigration court.

Meanwhile, the aunt in Rock Springs was keeping track of her own children's removal proceedings, and she moved to transfer her son's case to Atlanta. The Phoenix Immigration Court added Dacostagomez's identification number to the motion. The motion

was granted, and the location change meant that the government needed to send another written notice, this one specifying the new time and place of removal proceedings. *See id.* § 1229(a)(2)(A).

The Atlanta Immigration Court sent that notice to Dacostagomez at the most recent address they had on file for him—his aunt's home in Rock Springs. It was returned, undelivered, to the immigration court. Undeterred, the immigration court resent the notice, this time including the aunt's particular apartment number. To make up for the delivery failure, the hearing was postponed for another month, to February 2005.

The new notice was also returned. And Dacostagomez—who no longer lived at the Rock Springs address anyway—failed to attend the hearing. Because Dacostagomez did not attend his hearing, the presiding immigration judge ordered his removal. *See id.* § 1229a(b)(5)(A).

Dacostagomez did not leave. In fact, he remained in the United States for nearly a decade and a half before reappearing in the immigration system in July 2019, when he moved to reopen his removal proceedings. If the motion succeeded, his in absentia removal order would be rescinded, and he would have another chance to establish his right to remain in the country. *See id.* § 1229a(b)(5)(C).

Generally, any such motion must be filed within 180 days of a removal order's entry—a deadline that had long since expired. *Id.* § 1229a(b)(5)(C)(i). But an alien can move to reopen his

proceedings "at any time" if he "did not receive notice in accordance with paragraph (1) or (2)" of § 1229(a). *Id.* § 1229a(b)(5)(C)(ii). And Dacostagomez had learned of a recent Supreme Court decision—*Pereira v. Sessions*, 138 S. Ct. 2105 (2018). He argued that under *Pereira* he could not be removed, because the notice to appear he received when apprehended on the highway had not included the date and time of his initial hearing. *See* 8 U.S.C. § 1229(a)(1)(G)(i); *Pereira*, 138 S. Ct. at 2113–14.

An immigration judge denied Dacostagomez's motion to reopen. The Board of Immigration Appeals affirmed that judgment, concluding that his argument was foreclosed by its decision in *Matter of Pena-Mejia*, 27 I. & N. Dec. 546 (BIA 2019). There, the Board held that an immigration judge can enter—and need not rescind—an in absentia removal order if "a written notice containing the time and place of the hearing was provided *either* in a notice to appear under [§ 1229(a)(1)] *or* in a subsequent notice of the time and place of the hearing pursuant to [§ 1229(a)(2)]." *Id.* at 548.[1] This petition followed.

## II.

Where, as here, the Board issues a decision without adopting the immigration judge's reasoning, we review only the Board's reasoning. *See Thamotar v. U.S. Att'y Gen.*, 1 F.4th 958,

---

[1] After the Supreme Court's decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), the Board reaffirmed this holding. *See Matter of Laparra*, 28 I. & N. Dec. 425, 431 (BIA 2022).

969 (11th Cir. 2021). We review the Board's denial of a motion to reopen for an abuse of discretion, but review any underlying legal conclusions de novo. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007).

## III.

The Immigration and Nationality Act sets the rules and procedures for removal decisions. *See* 8 U.S.C. § 1229a; *see also id.* §§ 1225(b)–(c), 1228. The default process is extensive, and often includes multiple hearings before an immigration judge. *See id.* § 1229a(a)(1), (3). An alien generally has a right to be present at any and all of these removal hearings. *See id.* § 1229a(b)(2)(A)(ii). But skipping a hearing does not strip the immigration court of its power. In that circumstance an alien can be ordered removed "in absentia"—if he received proper notice of the hearing. *See id.* § 1229a(b)(5)(A).

The question here is what kind of notice is sufficient for this purpose. The Act provides for two different forms: an initial notice to appear, and a notice of a change in the time or place of a hearing. *Id.* § 1229(a)(1), (2). Shorthand for the former is "paragraph (1)" notice, and for the latter "paragraph (2)" notice. But does in absentia removal require a proper paragraph (1) notice to appear? A correct paragraph (2) notice of a change in the time or place? Both?

The answer is that in absentia removal is lawful so long as the government provided notice for whichever hearing was

missed, which means reopening is available if the notice for that hearing was not provided. That is a commonsense result, to be sure. But common sense does not drive the inquiry—the text of the statute does. Happily, the two match up here.

## A.

The statute we interpret provides that an alien may move to reopen proceedings that led to an in absentia removal order if he shows that he "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." *Id.* § 1229a(b)(5)(C)(ii). Dacostagomez argues that this provision allows reopening if there was any defective notice in his proceedings. In other words, he is eligible for reopening unless he received proper notice under both paragraphs (1) and (2).

The flaw in his argument starts with the word "or," which joins the relevant paragraphs. That conjunction is important— Congress connected the two notice paragraphs with "or," not "and." In doing so, it signaled that the two are alternatives and not a linked pair. "The use of the disjunctive 'or'" indicates "alternatives and requires that those alternatives be treated separately." *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1224 (11th Cir. 2009) (quotation omitted). In contrast, "and," in "its ordinary sense," indicates that the things it links are to be treated "jointly." *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 605 F.3d 1250, 1254 (11th Cir. 2010) (quotation omitted and alteration adopted). So by picking "or," Congress did not treat these notices as a complete set, where each needed to be received to support an

in absentia removal order.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 120 (2012).

Even if the plain text of this one provision were all we had, we would think that "or" means one or the other, not both.  But here we have more.  The full context of the statute announces its meaning—loud and clear.  The reopening provision we consider works in tandem with the removal provision that appears earlier in the same statute.  One specifies what notice is necessary to enter an in absentia removal order in the first place, while the other keeps that order in place unless an alien shows that he did not receive the required notice.  Because the provisions' notice requirements mirror one another, any insight about notice in the removal provision can inform our interpretation of the reopening provision.

Looking at the removal provision, its text is specific about what notice is necessary for in absentia removal, and how that notice must be shown:

> Any alien who, *after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien* or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the [government] establishes by clear, unequivocal, and convincing evidence that *the written notice was so provided* and that the alien is removable (as defined in subsection (e)(2)).

8 U.S.C. § 1229a(b)(5)(A) (emphasis added).[2] Here too, Congress used "or" to separate the listed notices. Without the "not" preceding the "or," the statute's meaning sharpens: the government must show that one notice or the other was provided—not both—to support an in absentia removal order. From there, it follows that an alien need receive only one form of notice to justify maintaining the in absentia removal order. It would be nonsensical to invalidate an in absentia removal order because two kinds of notice were not received when only one was required in the first place.

We thus know that one notice can be enough for in absentia removal. Logic suggests that the notice that must be received is the notice for the particular hearing where in absentia removal is ordered, and again the text of the statute directs the same conclusion. For starters, the removal provision requires the government to prove by "clear, unequivocal, and convincing evidence that *the* written notice was" provided. *Id.* (emphasis added). To trigger in absentia removal, then, the government cannot identify just any notice. It must identify "*the*" notice that was provided. That word does a lot of work here. When coupled with the singular noun, "notice," it describes a single, discrete notice. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1483 (2021).

---

[2] Because only "written notice" is relevant to the validity of in absentia removal, contrary to what Dacostagomez suggests, any defect in oral notice is immaterial.

And it refers to a particular notice, one that is "definite" or "previously specified by context." *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (quotation omitted); *see also The Chicago Manual of Style* §§ 5.70–.71 (17th ed. 2017). Here, that context is offered earlier in the provision, where Congress specified which notice must be provided: "written notice required under paragraph (1) or (2)." 8 U.S.C. § 1229a(b)(5)(A).

Looking back to those provisions, we recall that paragraph (1) provides for "a 'notice to appear,'" which begins removal proceedings and tells a person about, among other things, the charges against him and the initial "time and place at which the proceedings will be held." *Id.* § 1229(a)(1); 8 C.F.R. § 1239.1(a). Paragraph (2) notice is issued at a later point, if the time or place of the proceedings changes, or if the proceedings extend to another hearing. *See* Exec. Off. for Immigr. Rev., *Uniform Docketing System Manual*, at III-1 to -2 (Feb. 2021). When "any" such "change or postponement" in the proceedings' time or place occurs, paragraph (2) requires the government to give "a written notice" specifying "the new time or place." 8 U.S.C. § 1229(a)(2); *see also Uniform Docketing System Manual*, at III-1 to -2, IV-5.

Which kind of notice is required—notice under paragraph (1) or paragraph (2)—is thus tied to the nature of the hearing. For the original hearing, the government must provide a paragraph (1) notice to appear. But for any rescheduled hearing or additional hearing to follow, paragraph (2) notice becomes necessary. And for purposes of in absentia removal, the notice that

matters is the notice for the hearing missed; an immigration judge can order a person removed in absentia only if he did not "attend a proceeding" after the government provided the required notice. 8 U.S.C. § 1229a(b)(5)(A). Likewise, that order can be rescinded on finding that the notice specific to that hearing was improper. An alien must show that he did not receive notice under the relevant "*paragraph*"—"paragraph (1) or (2)." *Id.* § 1229a(b)(5)(C) (emphasis added). That means reopening can happen when notice was improper under a particular paragraph: the paragraph requiring notice of the hearing where the alien was removed in absentia.

All that to say, only one form of notice is required to render an in absentia removal lawful, and that notice must be for the hearing that was missed. Any other result would defy common sense. It would also run headlong into a constitutional conflict. The Fifth Amendment's due process protections extend to aliens in removal proceedings, which means they have a right to notice and to an opportunity to be heard. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). And those rights would be curbed if the government could order the removal of an alien for failure to attend a hearing that he did not know was happening because the government never told him about it.

We see no reason to think that Congress prescribed a process that conflicts with basic due process principles, and therefore no reason to think that an in absentia removal order would be immune from attack simply because an alien received proper notice for an entirely different hearing. To be sure, the opposite would lead to an equally absurd result—providing relief after a perfectly noticed hearing because an alien did not receive notice of an earlier hearing at which he was not ordered removed.

All markers thus point to the same answer: the Act allows in absentia removal if an alien fails to attend a hearing after being provided the written notice required for the hearing. And an alien can move to reopen that hearing if he shows that the government did not provide notice of it.[3]

---

[3] We note that, in reaching this holding, we disagree with the Ninth Circuit's interpretation of the in absentia removal provisions. In *Singh v. Garland*, that court declined to give "or" its usual disjunctive reading and held that it did not set forth alternative notices. 24 F.4th 1315, 1320 (9th Cir. 2022).

The court rejected the ordinary meaning of "or" for two reasons, both of which we find unpersuasive. For one thing, the court reasoned that "there can be no valid notice under paragraph (2) without valid notice under paragraph (1)." *Id.* at 1319. We disagree; a paragraph (2) notice can inform a person of a "change or postponement in the time and place" of removal proceedings even if the initial hearing information appeared in a follow-on notice of hearing. *See* 8 U.S.C. § 1229(a)(2)(A). We also reject the Ninth Circuit's conclusion that "any reference to written notice is the 'Notice to Appear' defined in paragraph (1)," and not the written notice in paragraph (2). *Singh*, 24 F.4th at 1320. Section 1229(a)(2)(B) specifies that "a ***written notice*** shall not be required ***under this paragraph***"—paragraph (2)—if an alien fails to

## B.

Now for application of these rules. We agree with Dacostagomez that, under *Niz-Chavez v. Garland*, his first notice was incomplete; it omitted an initial hearing time. 141 S. Ct. at 1480; *Pereira*, 138 S. Ct. at 2113–14.[4] But even if he is right that the flaw in his notice to appear means that he never received "notice in accordance with paragraph (1)," that notice was not the one for the hearing he missed. His removal proceedings were rescheduled twice. Notices of the "new time or place" of those proceedings are prescribed by paragraph (2) and were sent to Dacostagomez's last known address. Dacostagomez never received those notices—but he also no longer lived there. Paragraph (2) explicitly attends to this situation: if an alien is not in detention and failed to inform the

---

give the government an updated address. 8 U.S.C. § 1229(a)(2)(B) (emphasis added). So "written notice" in § 1229(a) can refer to notices under both paragraphs. Despite the Ninth Circuit's conclusion to the contrary, we give "or" its usual meaning and decide that, in this context, paragraph (1) and paragraph (2) notices are alternatives.

[4] Dacostagomez says that we should follow the Fifth Circuit's example and, upon concluding that the notice of hearing did not fix his defective notice to appear under paragraph (1), remand his case to the Board for further proceedings. *See Rodriguez v. Garland*, 15 F.4th 351, 355–56 (5th Cir. 2021). The Board's reasoning below and in *Matter of Pena-Mejia*, however, was that a subsequent notice of hearing counts as a "notice required under" paragraph (2)—not that it somehow satisfied paragraph (1). *See* 27 I. & N. Dec. at 548. We need not address whether that reasoning was correct today because, under our interpretation of the Act, the notice that matters is that for the hearing missed.

immigration court of any change in his address, "a written notice shall not be required."  8 U.S.C. § 1229(a)(2)(B).  Likewise, "[n]o written notice" is "required" before removing an alien in absentia if the alien moved and failed to provide the government with his new address.  *Id.* § 1229a(b)(5)(B).

Dacostagomez's failure to tell the government where he had moved not only prevented the government from giving him notice of the February 2005 hearing but also, under paragraph (2), released it from any obligation to do so.  So despite the government's failure to successfully deliver that notice, it satisfied its obligation "in accordance with" paragraph (2): no notice at all.  Dacostagomez therefore had no grounds on which to ask the immigration judge to reopen the removal proceedings.

## C.

Dacostagomez nonetheless contends that we should remand his case because the immigration judge in Phoenix violated his due process rights by changing the venue on his aunt's motion, not his own.[5]  For support he points to an agency regulation that

---

[5] Dacostagomez also suggests that the Board did not adequately address this claim.  But the Board need not "address specifically each claim the petitioner made." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (quotation omitted).  Rather, the Board must simply "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (quotation omitted).  And Dacostagomez makes no effort to show us how the Board failed to do so.  Instead, he simply makes conclusory assertions that the Board's consideration was inadequate.  By failing to support those assertions

allows an immigration judge to change venue "only upon motion by one of the parties." 8 C.F.R. § 1003.20(b). Violating that regulation, he says, deprived him of due process.

Under this Circuit's precedent, however, a mere irregularity in agency procedure does not deny a person due process. *See ACLU of Florida, Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Something more is needed to create a constitutional violation—the procedural error must deny a person adequate notice or an opportunity to be heard. *See ACLU of Florida*, 557 F.3d at 1229. Here, Dacostagomez received both when the immigration court tried to tell him that the venue had changed in a way "reasonably calculated" to ensure that information reached him: a written notice mailed to his last-known address. *Dominguez v. U.S. Att'y Gen.*, 284 F.3d 1258, 1259–61 (11th Cir. 2002) (quotation omitted). His due process argument fails.

*    *    *

An alien is eligible for a second chance at removal proceedings if he never received the notice telling him to attend the hearing he missed. But along with that right comes a responsibility; he cannot benefit from dodging a hearing or failing

---

with argument—or even any supporting authority—he has abandoned this contention. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

to keep the government informed of his current address. Dacostagomez did not tell the government when he moved, and he let his removal proceedings lie dormant for nearly fifteen years. A flaw in the initial notice handed to him does not entitle him, years later, to another chance at avoiding removal.  Dacostagomez's petition for review is therefore **DENIED.**