[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12647

Non-Argument Calendar

_____

SAMUEL ANTONIO MURILLO-JUAREZ,

                                                              Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                              Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A098-118-913

_____

Before WILSON, ANDERSON, and ED CARNES, Circuit Judges.

PER CURIAM:

Samuel Antonio Murillo-Juarez petitions for review of the Board of Immigration Appeals' (BIA) order affirming the Immigration Judge's (IJ) denial of his motion to reopen and rescind an *in absentia* order of removal, based on his alleged lack of notice of his removal hearing. He contends that the IJ and BIA failed to consider significant evidence and asks us to reverse the BIA's decision denying his motion to reopen. He argues that the totality of the evidence rebuts the presumption of delivery of the notice of hearing.

## I.

Murillo-Juarez,[1] a native and citizen of Honduras, entered the United States without inspection on or about May 15, 2004. He told Border Patrol agents that he was with his older sister Carla Patricia Murillo-Juarez, and the two were traveling to live with family in Miami. Carla provided the agents with a specific address

---

[1] For the first time on appeal to the BIA, Murillo-Juarez asserted that his real name was "Samuel Antonio Alvarado Casco" and that the NTA "arguably does not apply to him" because it listed the wrong name and as a result was "factually incorrect." He did not make that argument to the IJ. And no other documents or forms in the record — besides his submissions to the BIA — contain that name. His brief to this Court refers to him as "Samuel Murillo-Juarez" or "Petitioner." He has abandoned any argument that the NTA did not apply to him because it did not contain the correct name.

the two were headed to: 740 Northeast 86th Street, Miami, Florida 22128.

That same day, a Border Patrol agent personally served Murillo-Juarez with a notice to appear (NTA), which charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled. The NTA ordered him to appear before an IJ on July 28, 2004, at 8:30 a.m. and provided the address of the immigration court in Miami. It also stated that Murillo-Juarez was required to provide his mailing address, and he listed 740 Northeast 86th Street, Miami, Florida as his current address. The NTA specified that if his mailing address changed, Murillo-Juarez was required to submit written notice of that change. Murillo-Juarez signed the NTA and put his fingerprint on it.

On June 21, 2004, a notice of hearing was mailed to Murillo-Juarez at the Miami address listed on his NTA. This notice, like the NTA, stated that the hearing would take place on July 28, 2004, at 8:30 a.m., at the same address for the immigration court listed on the NTA. Murillo-Juarez did not appear at his removal hearing and the immigration judge ordered him removed *in absentia* based on the charge contained in the NTA.

Fourteen years later, in 2018, Murillo-Juarez, still in the United States, moved to reopen his removal proceedings. He alleged that Carla Patricia Murillo-Juarez was not his sister, he never lived in Miami, never provided a Miami address, and didn't know he had a removal hearing because he never received a notice of

4                    Opinion of the Court                    22-12647

hearing.  He also attached a copy of an approved I-130 petition for alien relative but made no arguments regarding it.[2]

The IJ concluded that Murillo-Juarez had not established good cause to reopen and denied his motion.  The IJ found that in 2004 Murillo-Juarez had claimed to Border Patrol that he was accompanying his sister and the pair were released from custody as a family unit.  The IJ also found that his purported sister had provided the Miami, Florida address, which was Murillo-Juarez's last known address, and that the hearing notice was sent there.[3]

Murillo-Juarez appealed the denial of his motion to reopen to the BIA.  There, he contended for the first time that he was entitled to asylum and withholding of removal because the country conditions had "changed dramatically" in Honduras, and that these changed conditions were relevant because he was now married to a U.S. citizen and had a child who was also a U.S. citizen.  He also mentioned "an approved I-130 petition due to his marriage to a

---

[2] The I-130 petition designated the notice type as "Husband or wife of U.S. Citizen" and listed "Samuel Antonio Alvarado Casco" as the beneficiary.  The approval form states that "[t]he approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found eligible for a visa for admission to the Unites States, or an extension, change, or adjustment of status."

[3] The record contains a change of address form signed by Murillo-Juarez.  But that form includes only the "[o]ld [a]ddress" — the Miami one.  The space to fill in a new address was left blank, as was the date of the address change.  As a result, Murillo-Juarez never provided notice of a different address.

United States citizen," asserting in passing that the petition demonstrated *prima facie* eligibility for relief. As for notice of his removal hearing, Murillo-Juarez again asserted that he was not traveling with his alleged sister when he entered the United States and did not live with her in Miami, so when the notice of hearing was sent to her address, he never received it.

The BIA dismissed Murillo-Juarez's appeal. The BIA found no clear error in the IJ's findings that the notice of hearing was sent to Murillo-Juarez's last known address and that Murillo-Juarez's statement claiming non-receipt was insufficient to rebut the presumption of proper notice. It noted that Murillo-Juarez had been personally served with an NTA and that he failed to present sufficient evidence to suggest that NTA did not pertain to him or that further fact-finding on that issue was necessary.

The BIA also concluded that because Murillo-Juarez had not argued to the IJ that the country conditions in Honduras had changed, the IJ did not err by not *sua sponte* addressing that issue. It determined that, in any event, Murillo-Juarez had submitted no evidence of changed country conditions that would establish any entitlement to reopening, asylum, or withholding of removal.

The BIA determined that Murillo-Juarez had not established that he was entitled to reopening based on an approved I-130 petition. He had not asked the IJ for reopening based on the form and so the IJ did not err by not addressing it. Finally, the BIA noted that Murillo-Juarez's motion to reopen was untimely and there were no exceptional circumstances warranting the exercise of its discretion

to reopen *sua sponte* his proceedings.  Murillo-Juarez petitioned our Court for review of the BIA's decision.

## II.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  Where the BIA agrees with the IJ's reasoning, we will also review the IJ's decision to that extent.  *Id.*  But because the BIA did not expressly adopt the IJ's decision or agree with the IJ's reasoning, we review only the BIA's decision.  *See id.*

We review the denial of a motion to reopen and rescind an immigration proceeding for an abuse of discretion.  *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009).  An abuse of discretion occurs where the BIA exercised its discretion arbitrarily or capriciously.  *Id.*  We review *de novo* the BIA's legal determinations and interpretations of law.  *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006).

## III.

8 U.S.C. § 1229 governs the initiation of removal proceedings against an alien who has been charged as removable for being present in the United States without being admitted or paroled. *See also* 8 U.S.C. § 1182(a)(6)(A)(i) (governing inadmissibility).  An alien will be removed *in absentia* if he fails to attend the removal hearing after being issued "written notice required under paragraph (1) or (2) of section 1229(a)," 8 U.S.C. § 1229a(b)(5)(A), and

the government shows by "clear and convincing evidence" that the alien is "deportable," *id.* § 1229a(c)(3)(A). Section 1229(a)(1) requires the alien to be issued a written notice to appear specifying, among other things, the time and place of his removal hearing and the consequences for failing to attend it. *Id.* § 1229(a)(1). If the time and place of the hearing are changed or postponed, § 1229(a)(2) requires the alien to be issued written notice specifying the new time and place and the consequences for failing to appear. *Id.* § 1229(a)(2).

The notice requirements under paragraphs (1) or (2) provide alternatives — only one type of notice is required. *See Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1354–55 (11th Cir. 2022). If the hearing is never changed or postponed, all that is required is an NTA complying with § 1229(a)(1). *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1317 (11th Cir. 2022). "The government must show that one notice or the other was provided — not both — to support an *in absentia* removal order." *Id.*

If the alien was issued the required NTA and failed to appear at his removal hearing, the IJ may remove him *in absentia*. 8 U.S.C. § 1229a(b)(5)(A). An *in absentia* removal order may be rescinded upon a motion to reopen either (i) filed within 180 days, "if the alien shows that the failure to appear was because of exceptional circumstances" or (ii) "filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." *Id.* § 1229a(b)(5)(C)(i)-(ii).

Murillo-Juarez argues that he did not receive notice under 8 U.S.C. § 1229(a) because, he claims, he never received the notice of hearing sent to the Miami address. But whether Murillo-Juarez received the notice of *hearing* is irrelevant. That's because Murillo-Juarez was personally served with an NTA containing the same information as the notice of hearing — a fact he does not dispute. That NTA complied with § 1229(a)(1): it provided the time, date, and location of his hearing, as well as the consequences for failing to attend it. And Murillo-Juarez signed and put his fingerprint on the NTA.[4]

"The notice required to render an *in absentia* removal lawful is the notice for the particular hearing that was missed." *Dacostagomez-Aguilar*, 40 F.4th at 1314. Here, the NTA Murillo-Juarez received and signed provided notice of the particular hearing he missed. That hearing was never changed or postponed, and the later issued notice of hearing only reiterated the information contained in the NTA. Because the government must show "that one

---

[4] Murillo-Juarez's argument about the notice of hearing fails for another reason. Non-citizens have an affirmative duty to provide written notification of a change in address. 8 U.S.C. § 1305(a). If an alien fails to update his address, no notice is required. 8 U.S.C. § 1229a(b)(5)(B). Because Murillo-Juarez never provided an updated address, his alleged failure to receive the notice of hearing does not mean he was deprived of any notice required under § 1229(a). *See Dragomirescu*, 44 F.4th at 1356–57 ("[A]n alien can be removed *in absentia* **without** notice of his removal hearing's time and place if, after receiving an initial notice to appear advising him to keep his address up-to-date, the alien moves and fails to inform DHS of his new address.").

22-12647                    Opinion of the Court                    9

notice or the other was provided — not both — to support an *in absentia* removal order," *id.* at 1317, it has shown that Murillo-Juarez was issued all of the notice required under § 1229(a). As a result, the BIA did not err in affirming the IJ's order finding that Murillo-Juarez received notice of his removal hearing, making his petition untimely.[5] *See* 8 U.S.C. § 1229a(b)(5)(C)(i)–(ii).

Murillo-Juarez entered this country unlawfully 19 years ago. He has shown no ground for staying any longer.

**PETITION DENIED.**

---

[5] By failing to adequately argue these issues in his brief to this Court, Murillo-Juarez has abandoned any challenges to: the BIA's refusal to exercise its *sua sponte* authority to reopen his removal proceedings; and its rejection of his request for asylum and withholding of removal based on changed country conditions. *See Kazemzadeh*, 577 F.3d at 1341 (explaining that, when a petitioner "makes only a passing reference in his brief" to an argument, that argument is treated as abandoned).

Although Murillo-Juarez's brief references the I-130 application and the changed country conditions being "brushed" off by the BIA, he makes no substantive arguments as to how BIA abused its discretion or acted arbitrarily or capriciously in its findings on these issues, which also were not clearly raised before the IJ. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (noting that a simple statement "that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this Court's] considering the issue on appeal"). Instead, the only arguments he properly preserved for appeal concern his alleged lack of notice for the removal hearings, which fail.