[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11259

Non-Argument Calendar

_____

SHEVON COOTE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A207-632-648

_____

Before BRANCH, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Shevon Coote, proceeding *pro se*, seeks review of the order of the Board of Immigration Appeals ("BIA") affirming the denial of his application for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), and denying his motions to reopen and remand. After careful review, we deny his petition.

## I. BACKGROUND

Coote is a native and citizen of Jamaica who was initially admitted to the United States as a visitor for pleasure in October 2014 before obtaining lawful permanent resident status in June 2015. About a year later, Coote was indicted in the United States District Court for the Middle District of Florida with conspiracy to import and to possess with intent to distribute large amounts of marijuana and cocaine. Coote cooperated with the government, pleaded guilty to the single charge, and was sentenced to 60 months of imprisonment.

### A. Coote's Initial Removal Proceedings

In July 2021, the Department of Homeland Security issued a notice to appear charging Coote with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) due to the nature of his criminal conviction. An immigration judge sustained the removability charge.

Thereafter, Coote, through counsel, filed an application seeking relief from removal under the CAT. He explained that members of his wife's family who were part of an influential Jamaican gang had harmed him and threatened him with future harm because of his cooperation with the government following his 2016 arrest. He stated that he feared for his safety if he were to be returned to Jamaica because his life had been threatened, the government was unable to control the gangs, and the police worked with these criminal organizations. Coote offered several documents in support of his application, including (1) documents from his federal criminal case; (2) articles reporting that police were searching for his brother-in-law as a "person of interest" in violent crimes; (3) articles reporting widespread gang activity across Jamaica; and (4) the U.S. Department of State's 2020 Jamaica Human Rights Report.

During his testimony at a January 2021 merits hearing, Coote further explained that his father-in-law, Lindel Saunders ("Lindel"), and his brother-in-law, Jeffrey Saunders ("Jeffrey"), were members of the Big Yard Gang, a criminal enterprise with "island-wide" influence in Jamaica and a presence in the United States prison system. He elaborated that both he and his aunt became involved in the Big Yard Gang's drug activity while living in this country. When Coote was arrested, Lindel, who also acted as an informant for the United States government, provided Coote an attorney and a specific list of names that he could supply to satisfy his cooperation agreement with the government. However, Coote provided additional information to the government that

incriminated his aunt and Lindel, leading him to be labeled as a "snitch," which endangered his life.

Following the hearing, the immigration judge issued an oral decision denying relief. Regarding CAT relief, the immigration judge noted that the Human Rights Report did not reflect any reports of torture or disappearances by or on behalf of the Jamaican government. He further noted that Coote's evidence highlighted police efforts to question Jeffrey, which contradicted his assertion that police would be unwilling to intervene, and the record did not otherwise indicate that government officials would be willfully blind to any harm inflicted upon Coote. Accordingly, the immigration judge found that Coote had not met his burden to establish that the Jamaican government would acquiesce to his torture.

While the immigration judge found that Coote had not alleged past torture, he noted that Coote had testified that Jeffrey had threatened his life and placed a bounty on his head, and that he had been attacked while in federal prison. However, the immigration judge noted that no one had claimed responsibility for the attack, Coote testified that he had not had contact with Jeffrey and Lindel for a number of years, and Coote was not harmed prior to reporting to prison. The immigration judge further found that, other than the fact that there was one government official living in Coote's hometown of Granville, Jamaica, there was no evidence that Jamaican officials were complicit in the Big Yard Gang's activities, and there was no evidence of the gang's island-wide operations or influence. The immigration judge further concluded that Coote had

not demonstrated that he could not safely relocate within Jamaica, because, among other things, Coote testified "that there [we]re no 'barriers' to people moving between communities in Jamaica." The immigration judge "accept[ed] that Jamaica c[ould] . . . be a very dangerous place to live, especially [for] those . . . engaged in narco-trafficking." However, he concluded that Coote's fear of future torture was not objectively reasonable.

### B. Coote's First BIA Appeal and Motion to Remand

Coote, through newly obtained counsel, appealed the immigration judge's denial of CAT relief to the BIA. Coote argued that the immigration judge failed to properly evaluate his testimony and record evidence and erred in his determinations regarding government acquiescence and Coote's ability to relocate.

Prior to the BIA issuing its decision, Coote filed a "Notice of Information" indicating that he had filed a Florida Bar complaint for ineffective assistance of counsel against his previous attorney and supplied several pieces of evidence to support his allegations.

The BIA dismissed Coote's appeal. It affirmed the immigration judge's determinations that Coote had not demonstrated that (1) it was more likely than not that he would be tortured in Jamaica, (2) he experienced past torture, and (3) he was unable to safely relocate within Jamaica. Because these findings were dispositive, the BIA found it unnecessary to address Coote's arguments regarding government acquiescence. The BIA next construed Coote's "Notice of Information" as a motion to remand and denied it because Coote did not "substantially comply" with *Matter of Lozada*,

19 I. & N. Dec. 637 (BIA 1988), *overruled in part by Matter of Compean*, 24 I. & N. Dec. 710 (BIA 2009), because he did "not submit any evidence that he informed prior counsel of his [ineffectiveness] allegations." Thereafter, Coote filed his first petition for review with our Court, challenging the denial of CAT relief.

*C. Coote's Motion to Reopen, Consolidation, and Remand*

While his first petition for review was pending with our Court, Coote filed a *pro se* motion to reopen his removal proceedings based on newly discovered evidence and ineffective assistance of counsel. He also submitted numerous pieces of new evidence relating to his allegations of future harm at the hands of the Big Yard Gang and Jamaica's country conditions.

The BIA denied Coote's motion. It first found that the motion was time-barred, because it was filed more than 90 days after entry of his final order of removal, as well as numerically barred, because Coote had already filed a construed motion to remand. Nonetheless, the BIA assumed Coote complied with *Matter of Lozada*, but determined that he had not demonstrated any prejudice from his counsel's alleged deficient performance. It found that Coote's motion did not explain how his new evidence affected the previous determinations that (1) he had not had contact with Jeffrey for over five years, (2) he had not shown that he would be unable to safely relocate within Jamaica, and (3) his father remained in Jamaica unharmed. The BIA further reasoned that Coote "ha[d] not shown changed country conditions in Jamaica since his prior hearing," as he essentially sought reopening "to assert information

about the same claim" that he had already litigated, so he had not overcome "the time and numerical limitations for filing a motion to reopen."

Coote then filed his second petition for review with our Court, challenging the denial of his motion to reopen. We consolidated his pending petitions. Without conceding error, the government moved to remand the proceedings "to permit the [BIA] an opportunity to reconsider its denial of [Coote's] motion to reopen as it concerns the 'no-likelihood of torture' and relocation findings" as well as "the immigration judge's acquiescence finding." We granted the government's request, vacated the BIA's decisions, and remanded the case to the BIA for further proceedings.

*D. BIA Proceedings on Remand*

On remand from our Court, Coote filed a *pro se* motion asking the BIA to remand his case to the immigration judge. He argued that the BIA should reconsider its past findings regarding government acquiescence and his ability to relocate, and he alleged that both his initial and appellate counsel performed ineffectively. In support of his motion, Coote attached several pieces of evidence, some of which had been supplied in his previous motions to the BIA. We will briefly summarize that evidence here.

Regarding his ineffective-assistance allegations, Coote submitted three affidavits addressing his initial counsel's failure to inform him of the evidence necessary to establish CAT relief eligibility and discussing his Florida Bar complaint, a list of potential witnesses, documents relating to his Florida Bar complaint, as well as

a summary of his previously submitted exhibits and excerpts of the merits hearing transcript.

As it related to his underlying allegations of future harm, Coote supplied affidavits from family members stating that his cousin, Jeraud Coote ("Jeraud"), was murdered by the Big Yard Gang in retaliation for Coote's cooperation with the government, and that both Coote and his family would be in danger if he returned to Jamaica. Coote also supplied an "Order for Burial" confirming Jeraud's death.

Coote further submitted documents describing (1) the shooting death of Michael Medley by an unknown assailant, which was being investigated by Montego Bay police, and (2) the suspected murder of Suzette Brown by a hitman for the Big Yard Gang whom police had tried to apprehend numerous times, to no avail. Coote also provided a signed letter from Anthony Simpson, the "Officer in Charge [of] Criminal Investigations, Senior Superintendent" in Montego Bay, describing the scope of the Big Yard Gang's influence and asserting that local police were aware of the gang's intention to kill "Shevron Coote." Additionally, Coote submitted an affidavit from Dr. Damion Blake, who had reviewed the evidence in Coote's case and concluded that if Coote returned to Jamaica, he would likely be seriously injured or killed, would not be able to safely relocate within the country, and would not be guaranteed protection from the Jamaican police due to corruption.

The BIA issued an order dismissing Coote's appeal and denying his requests to reopen and remand, as well as denying his

subsequent motions requesting an entry of default judgment against the government. Recounting Coote's initial proceedings, the BIA agreed that Coote had not experienced past torture in Jamaica and affirmed the immigration judge's determination that Coote had not established that it was more likely than not that he would be tortured in Jamaica with the acquiescence of government officials. The BIA recognized that, while there were problems within Jamaica, the country conditions evidence showed that the government was actively working to combat gang activity, which was dispositive of Coote's CAT claim. It also disagreed with Coote's contention that the presence of one corrupt government official in his home province established a likelihood of future harm with government consent or acquiescence. As such, the BIA affirmed the immigration judge's denial of CAT relief.

Turning to Coote's pending motions, the BIA assumed that they were procedurally compliant and not otherwise barred, but determined that Coote's requests to reopen and remand were due to be denied because he failed to establish that he was prejudiced by his previous attorneys' alleged deficient performance. Specifically, the BIA concluded that Coote's newly submitted evidence did not establish a reasonable likelihood of CAT relief eligibility. The BIA recognized that Superintendent Simpson's letter and Dr. Blake's affidavit established that the Big Yard Gang had island-wide influence in Jamaica and that the local government was aware that the gang had targeted Coote. However, it found that the evidence relating to the deaths of Brown and Medley

documented numerous police efforts to investigate and apprehend the perpetrators of violent crimes.

Turning specifically to Dr. Blake's affidavit, the BIA noted that it was not supported by a curriculum vitae or résumé, as required by BIA precedent. Nonetheless, it noted Dr. Blake's findings, including his discussion of the Jamaican government's inability to control gang violence and conclusion that the police would likely either turn a blind eye or acquiesce to Coote's torture, or possibly be complicit in Coote's harm. The BIA concluded, however, that given the Jamaican government's documented efforts to combat both gang violence generally and Jeffrey specifically, Dr. Blake's affidavit did not establish a reasonable likelihood that Coote would establish CAT relief eligibility if his proceedings were reopened, and Coote thus did not establish that he was prejudiced by his prior counsels' performance.

Notably, a member of the BIA panel dissented and explained that she (1) would have remanded Coote's removal proceedings for the immigration judge to evaluate the newly submitted evidence in the first instance, (2) believed that her colleagues had overstepped their authority, and (3) believed the new evidence established a reasonable probability that the outcome of Coote's initial proceedings would have been different.

Coote now petitions for review of the BIA's decision.

## II. STANDARD OF REVIEW

We generally review the BIA's denial of a motion to reopen for an abuse of discretion, although we review *de novo* any

underlying legal conclusions of the BIA. *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022). When reviewing for abuse of discretion, we ask whether the BIA exercised its discretion arbitrarily or capriciously. *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013). "The BIA abuses its discretion when it misapplies the law in reaching the decision" or fails to "follow[] its own precedents without providing a reasoned explanation for doing so." *Id.*

### III. DISCUSSION

A motion to remand based on new evidence is treated as a motion to reopen. *Dos Santos v. U.S. Att'y Gen.*, 982 F.3d 1315, 1322 (11th Cir. 2020). A motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B).

A petitioner must present new evidence that would likely change the outcome if proceedings before the immigration judge were reopened. *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006). Specifically, when a motion to reopen is based on allegations of ineffective assistance of counsel, the movant must show that "his counsel's deficient representation resulted in prejudice to him." *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005). To show prejudice, a movant must show that "the performance of counsel [wa]s so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Id.*

"Motions for reopening of immigration proceedings are disfavored for the same reasons as petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). "This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes to remain in the United States." *Id.* As such, the BIA may exercise its discretionary authority to deny a motion to reopen on any of three independent grounds: "failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Id.*; *see also* 8 C.F.R. § 1003.2(a) ("The [BIA] has discretion to deny a motion to reopen even if the moving party has made out a prima facie showing for relief.").

As an initial matter, despite the government's argument to the contrary, we retain jurisdiction to review the BIA's factual determinations leading to the denial of CAT relief and the resolution of any related motions regardless of the criminal alien bar. *See Nasrallah v. Barr*, 590 U.S. 573, 583 (2020). As to the merits, we conclude that the BIA did not abuse its "broad discretion" in denying Coote's requests to reopen and remand his removal proceedings to the immigration judge. *Doherty*, 502 U.S. at 323 (quotation marks omitted).

In his petition for review, Coote essentially argues that the BIA erred by (1) engaging in first-instance factfinding of his newly

submitted evidence rather than remanding to the immigration judge, (2) concluding that Coote had not demonstrated the requisite prejudice to establish a claim of ineffective assistance of counsel, and (3) discounting Dr. Blake's affidavit because he did not provide a curriculum vitae or résumé.[1]

Coote is correct that, generally, the BIA may "not engage in factfinding in the course of deciding cases." 8 C.F.R. § 1003.1(d)(3)(iv). However, the BIA did not engage in impermissible factfinding in this case, because an evaluation of Coote's newly submitted evidence in the first instance was necessary to determine whether he had demonstrated that it was proper to reopen his removal proceedings. *See Ali*, 443 F.3d at 813. Indeed, to establish that he was prejudiced by the alleged deficient performance of his previous counsel, Coote was required to show a reasonable likelihood that his newly submitted evidence would have made him eligible for CAT relief. *Dakane*, 399 F.3d at 1274.

To be eligible for CAT relief, Coote must establish "that it is more likely than not that he . . . would be tortured if removed to" Jamaica. 8 C.F.R. § 1208.16(c)(2). Because the BIA affirmed the immigration judge's acquiescence findings, to succeed on his motion to reopen, Coote was required to present new evidence that would

---

[1] Although we liberally construe *pro se* filings, Coote does not brief any challenge to the finding that he did not establish entitlement to CAT relief during his original removal proceedings. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1331 n.2 (11th Cir. 2019). Accordingly, Coote has abandoned any contention the BIA erred in this respect. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

likely establish that the Jamaican government would acquiesce to his torture. *See Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020) ("CAT only provides protection from torture where it is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." (quotation marks omitted)). The BIA thus could not properly rule on Coote's requests to reopen and remand without evaluating whether his new evidence was likely to establish acquiescence and, therefore, his eligibility for CAT relief.

Coote also fails to show that the BIA abused its discretion in determining that his newly submitted evidence was unlikely to change the outcome of his removal proceedings if they were reopened. *Ali*, 443 F.3d at 813; *Dakane*, 399 F.3d at 1274. The BIA acknowledged the evidence establishing the Big Yard Gang's widespread influence and the local authorities' awareness of threats against Coote's life. However, it also noted that some of Coote's other evidence supported, rather than undermined, any argument that the Jamaican government would acquiesce to his torture, as they documented efforts to combat both gang violence generally and Jeffrey's actions specifically. *See Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1288 (11th Cir. 2021) ("[E]ven if [the petitioner] w[as] right that the police are not effective at controlling [gang activity], it is dispositive that they are trying to do so.").

Although the BIA noted that Dr. Blake did not submit a curriculum vitae or résumé along with his affidavit, it did not make explicit credibility findings or assign degrees of weight to Coote's

submitted evidence based on this determination. Instead, it discussed Dr. Blake's conclusions and pointed to specific elements of the record to support its determination that Coote's newly submitted evidence was unlikely to alter the previously affirmed acquiescence finding. *See Ali*, 443 F.3d at 813; *Dakane*, 399 F.3d at 1274.

Accordingly, the BIA did not act arbitrarily or capriciously in determining that Coote failed to establish a reasonable likelihood that he would demonstrate eligibility for CAT relief if removal proceedings were reopened. *Ferreira*, 714 F.3d at 1243.

### IV. CONCLUSION

For the reasons stated above, we **DENY** Coote's petition for review.