[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-13705

_____

ANDREI DRAGOMIRESCU,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A203-043-855

_____

Before NEWSOM, BRANCH, and BRASHER, Circuit Judges.

BRANCH, Circuit Judge:

Andrei Dragomirescu petitions for review of the denial of his motion to reopen his removal proceedings. After receiving a notice to appear that initiated his removal proceedings and advised him of his obligation to keep his address up-to-date with the Department of Homeland Security (DHS), Dragomirescu moved and did not send the agency his new address. The immigration court later sent Dragomirescu a notice informing him of the time and place of his removal hearing. Since he had moved, Dragomirescu did not receive that notice. He then failed to show up at his removal hearing and was ordered removed in absentia.

Dragomirescu asserts that he was improperly ordered removed in absentia because he did not receive the notice of his removal hearing the agency was required to provide under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.* We disagree. Once he received a notice to appear warning him of his obligation to update the agency when he changed addresses, Dragomirescu was on the hook to follow through with that instruction. Because he failed to keep DHS apprised of his whereabouts, the INA allowed for Dragomirescu's removal in absentia even though he never received the later notice informing him of his removal hearing's time and place. Dragomirescu's removal order complied with the statute's requirements. Accordingly, we deny the petition.

## I.

Andrei Dragomirescu, a native and citizen of Romania, first entered the United States in 1998. For a time in the early 2010s, Dragomirescu was a conditional permanent resident, a status he obtained by virtue of his marriage to a U.S. citizen. In 2013, Dragomirescu applied to remove the conditions on his permanent resident status. But he missed the interview with DHS for his adjustment-of-status request and later divorced. As a result, in 2015, DHS terminated Dragomirescu's status and he became removable under 8 U.S.C. § 1227(a)(1)(D)(i).

In January 2016, DHS sent Dragomirescu a notice to appear initiating his removal proceedings. DHS sent the notice by regular mail to Dragomirescu's then-current address in Marietta, Georgia.[1] The notice to appear informed Dragomirescu that DHS was charging him as removable and that his removal hearing would be held at a time and place "to be set." It also contained a series of advisals about Dragomirescu's responsibility to keep his address up-to-date with the agency and the potential consequences that might follow if he did not:

> You are required to provide the DHS, in writing, with
> your full mailing address and telephone number. You

---

[1] In his brief, Dragomirescu asserts that he "was not residing at [the Marietta] address at the time the Notice to Appear was mailed there." There is no record evidence to support that assertion. At oral argument, Dragomirescu's counsel clarified that he was in fact living at the Marietta address in January 2016.

must notify the Immigration Court immediately using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

Sometime after DHS sent the notice to appear, Dragomirescu moved to a new location, but did not inform DHS or the immigration court of his new address. In August 2017, the immigration court sent Dragomirescu a notice with the time and place of his removal hearing. The immigration court sent the notice of hearing to the same Marietta address it had on file—the last one Dragomirescu had provided. Naturally, since he no longer lived there, Dragomirescu did not receive the notice of hearing, which was returned undeliverable.

In November 2017, an immigration judge conducted Dragomirescu's removal hearing. Dragomirescu did not show up, so the immigration judge conducted the hearing in absentia and ordered Dragomirescu removed based on evidence of his

removability provided by DHS.     In December 2017, the immigration court sent a notice of the removal determination to the same Marietta address as before.  That notice was returned undeliverable too.

In July 2019, Dragomirescu moved to rescind his in absentia removal order and reopen his removal proceedings.  He alleged that he had received neither the January 2016 notice to appear that initiated his removal proceedings, nor the August 2017 notice setting the time and place of his hearing, and that the removal order was therefore improper.

An immigration judge denied Dragomirescu's motion to reopen his removal proceedings.  Dragomirescu appealed that decision to the Board of Immigration Appeals, which adopted and affirmed the immigration judge's decision.  The Board noted that the August 2017 notice setting the time and place of Dragomirescu's removal hearing had been returned undeliverable. However, the Board found that "the evidence show[ed] that the respondent received" the initial notice to appear that "informed him of the necessity of informing the Court if his address changed." And, the Board found that Dragomirescu had provided no evidence that "would serve to rebut the presumption" that he received that initial notice to appear, which was sent to his current address at the time.  The Board ruled that Dragomirescu had properly been ordered removed in absentia and dismissed the appeal.  This petition followed.

## II.

Where, as here, the Board "expressly adopts or explicitly agrees with the Immigration Judge's opinion . . . we review the Immigration Judge's opinion to the extent the [Board] found that the Immigration Judge's reasons were supported by the record, and we review the [Board's] decision with regard to those matters on which it rendered its own opinion and reasoning." *Thamotar v. U.S. Att'y Gen.*, 1 F.4th 958, 969 (11th Cir. 2021).

"We review the denial of a motion to reopen removal proceedings for abuse of discretion," but we review legal determinations de novo. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007). In evaluating whether the agency abused its discretion, our "review is limited to determining whether [it] exercised its discretion in an arbitrary or capricious manner." *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). "The moving party bears a heavy burden, as motions to reopen are disfavored, especially in removal proceedings." *Id.* (citations omitted).

## III.

Dragomirescu argues that the immigration judge improperly ordered him removed in violation of the INA's requirements for in absentia removal. As we will explain, we disagree.

We begin with the relevant legal framework. The INA sets out an intricate set of procedures for the removal of aliens

unlawfully present in the United States.  *See* 8 U.S.C. §§ 1229, 1229a.  To start with, the statute provides that an alien has a right to notice of his removal proceedings.  *See id.* § 1229(a).  The statute contemplates two distinct types of written notice to aliens who are subject to removal—one of which is sent to the alien in every removal case, and the other of which may or may not be.

The first type of written notice the statute provides for is the "notice to appear."  *Id.* § 1229(a)(1).  Akin to a charging document, the notice to appear is sent to the alien at the outset of his removal proceedings.  Among other things, the notice to appear informs the alien of the specific charges against him and outlines their legal and factual basis.  *Id.* § 1229(a)(1)(A)–(D).  It informs the alien of the time and place at which his removal hearing will be held.[2]  *Id.*

---

[2] In earlier times, DHS and its predecessor agency would often send aliens incomplete notices to appear that left the time and place of the aliens' removal hearings blank.  *See Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018).  Recently, the Supreme Court has made clear that this approach does not comport with the INA's statutory scheme.  *See id.* at 2113–18; *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480–85 (2021).  Instead, the Supreme Court has explained that, to comply with the statute, the notice to appear must provide, within the four corners of a single document, all the information the statute requires that it contain, including the time and place of the removal hearing.  *See Niz-Chavez*, 141 S. Ct. at 1480.

In this case, the January 2016 notice to appear Dragomirescu received was incomplete under *Niz-Chavez*'s rule—it was missing the time and place of his removal hearing.  However, that defect is immaterial to our analysis.  In August 2017, the immigration court sent Dragomirescu a separate notice informing him of the time and place of his removal hearing.  And as we explain below, for in absentia removal, what matters is whether the alien received

8                    Opinion of the Court                    20-13705

§ 1229(a)(1)(G)(i).  It advises the alien of his obligation to keep DHS apprised of any changes to his address, which ensures that DHS is able to get in touch with the alien while the removal process is ongoing.  *Id.* § 1229(a)(1)(F)(i)–(ii).  Finally, the notice to appear warns the alien that, if he fails to keep his address up-to-date with the agency, the immigration judge can order him removed at a hearing in his absence.  *Id.* § 1229(a)(1)(F)(iii); *see also id.* § 1229a(b)(5).

The second type of notice the statute provides for is what is commonly called a "notice of hearing."  *See id.* § 1229(a)(2).  A notice of hearing is a simpler document than a notice to appear—mainly, it informs an alien that the time or place of his upcoming removal hearing has changed.  *Id.*  In any particular removal case, the immigration court may send one or more notices of hearing updating the time or place of the alien's removal hearing, or it may send none.

Turning now to the rules for the removal proceedings themselves, these proceedings are conducted by immigration judges who have the power to receive evidence and hear testimony from the alien and others.  *Id.* § 1229a(a)(1), (b)(1).  The alien has the right to attend his removal hearing and plead his case if he wishes, either pro se or through counsel.  *Id.* § 1229a(b)(2)(A)(ii),

---

"notice for the particular hearing that was missed"—which in this case is the August 2017 notice, not the January 2016 notice.  *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1314 (11th Cir. 2022).

20-13705                Opinion of the Court                    9

(b)(4). Oftentimes, aliens attend their removal hearings and raise challenges to their removability.

And what if an alien fails to show up to his removal hearing? As we have emphasized, "[s]kipping [one's removal] proceedings is no way to avoid removal." *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1313–14 (11th Cir. 2022). To ensure that the removal process is not stymied by aliens playing hide and seek, the INA sets out procedures for the removal of an alien "in absentia"— *i.e.*, at a hearing at which the alien is absent. *See* 8 U.S.C. § 1229a(b)(5). The statute provides that an alien who does not attend his removal hearing "shall be ordered removed in absentia" as long as the "written notice required under paragraph (1) or (2) of section 1229(a) of this title"—*i.e.*, the notice to appear or notice of hearing setting the time and place of the hearing—was provided to the alien.[3] *See id.* § 1229a(b)(5)(A).

Of course, sometimes an alien, for whatever reason, never receives notice of his removal hearing's time and place. Typically, when that happens, the statute does not allow for in absentia removal. *See id.* But what if the reason the alien failed to learn the time and place of his hearing is because he moved and failed to send

---

[3] Recently, we clarified that the "written notice required under paragraph (1) or (2)" passage of the in absentia statute operates in the disjunctive, such that— when an alien was sent both a notice to appear and one or more later notices of hearing—in absentia removal is warranted as long as the alien received "the notice for the particular hearing that was missed." *Dacostagomez*, 40 F.4th at 1314, 1316–18.

the agency his new address?  The in absentia statute addresses this situation too, in what we will call its "exception clause":

> No written notice shall be required under subparagraph [(b)(5)](A) if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title.

*Id.* § 1229a(b)(5)(B); *see also id.* § 1229(a)(2)(B) (similarly stating that written notice to an alien of a change to the time or place of his removal hearing "shall not be required . . . if the alien has failed to provide the address required under [section 1229(a)](1)(F)"). The exception clause requires some breakdown to understand. The "written notice . . . required under subparagraph [(b)(5)](A)" is the notice of the time and place of the alien's hearing under § 1229(a)(1) or (2) that is normally required for in absentia removal. The "failed to provide the address required under section 1229(a)(1)(F)" language is a reference to the "keep your address up-to-date or else" advisals in the notice to appear in § 1229(a) that kicks off the removal proceedings.  Putting it all together, and in plainer terms, here is what the exception clause says: an alien who does not receive notice of the time and place of his removal hearing after he moves and fails to send DHS his new address can be removed in absentia, as long as he at least received the initial notice to appear advising him of his obligation to keep his address up-to-date and the consequences of failing to do so.  After all, if an alien fails to tell DHS he has moved after DHS warned him that he must,

20-13705                Opinion of the Court                11

he has only himself to blame if he fails to receive any later notices the agency tries to send him.

Notably, in *In re G-Y-R-*, 23 I&N Dec. 181 (BIA 2001), the en banc Board adopted this same reading of the exception clause. The Board found that in absentia removal under the exception clause is allowed "only if the alien has first been informed of the particular statutory address obligations associated with removal proceedings and of the consequences of failing to provide a current address," information that is "first communicated in the Notice to Appear." *Id.* at 187. Thus, the Board interpreted the statute to "preclude the entry of an in absentia order of removal when the alien has not received the Notice to Appear and thus does not know of the particular address obligations associated with removal proceedings." *Id.* at 183. The Board's interpretation of the in absentia statute is one to which we owe deference. *See Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006) ("[R]eview of the [Board's statutory] interpretation is informed by the principle of deference articulated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, [467 U.S. 837 (1984)]."). And for the reasons we have stated, we agree with it.[4]

_____

[4] We note that in *Dominguez v. U.S. Attorney General*, 284 F.3d 1258 (11th Cir. 2002)—a case involving a due process challenge to an in absentia removal order—we appeared to interpret the exception clause more broadly than the Board has, to allow for in absentia removal when an alien fails to keep his address up-to-date with DHS, ***even if the alien never received a notice to appear advising him of his obligation to do so***. *See id.* at 1259–61 (noting that

To recap: as a general rule, an alien may be removed in absentia if he received notice of the time and place of his removal hearing and then failed to attend. *See* 8 U.S.C. § 1229a(b)(5)(A); *Dacostagomez*, 40 F.4th at 1316–18. But, as an exception to that rule, an alien can be removed in absentia **without** notice of his removal hearing's time and place if, after receiving an initial notice to appear advising him to keep his address up-to-date, the alien moves and fails to inform DHS of his new address. *See* 8 U.S.C. § 1229a(b)(5)(B).

---

"an alien has an affirmative duty to provide the government with a correct address" as a matter of course under a different section of the INA, 8 U.S.C. § 1305(a), and broadly stating that "[f]ailing to provide the INS with a change of address will preclude the alien from claiming that the INS did not provide him or her with notice of a hearing").

*Dominguez* was a due process case in which our statements about the INA's statutory requirements for in absentia removal were dicta. *See id.* There is a surface-level tension between the Board's narrower reading of the exception clause in *G-Y-R-* and our apparently broader reading of the clause in dicta in *Dominguez*. But we think the tension is explained by the fact that the cases involved different types of challenges to in absentia removal. *Dominguez* addressed a constitutional challenge under the Due Process Clause, *see id.* at 1259, whereas *G-Y-R-* addressed a statutory challenge under the INA itself. *See* 23 I&N Dec. at 187. Importantly, the constitutional and statutory requirements for notice prior to in absentia removal are distinct. The constitution sets a minimum floor. *See Anin v. Reno*, 188 F.3d 1273, 1278 (11th Cir. 1999) ("Due process is satisfied if notice is accorded in a manner reasonably calculated to ensure that notice reaches the alien." (quotation omitted) (citing *Mullane v. Hanover Bank & Tr. Co.*, 339 U.S. 306, 318 (1950))). But Congress is free to enact notice requirements going beyond the Constitution's guarantees, and in the in absentia removal statute, it has.

We now turn to applying these rules to the case at hand. Dragomirescu was ordered removed in absentia at a hearing he failed to attend. He challenges the propriety of that order under the INA's in absentia removal provisions. Under the framework we have set out, the first question we must answer is whether Dragomirescu received notice of the time and place of the "hearing at which he was ordered removed." *See Dacostagomez*, 40 F.4th at 1314. The answer to that question is no. After DHS earlier sent Dragomirescu an initial notice to appear that left the time and place of his removal hearing blank, in August 2017, the immigration court sent him a notice of hearing filling those blanks in. The notice of hearing was returned undeliverable. It is clear Dragomirescu did not receive it.

Because Dragomirescu did not receive notice of his removal hearing's time and place, we turn to the in absentia statute's exception clause—which, again, allows for in absentia removal *without* such notice if the alien did not receive the notice after he moved and failed to update his address with DHS. 8 U.S.C. § 1229a(b)(5)(B). As we have explained, in absentia removal under the exception clause is warranted if the alien received a notice to appear warning him to keep his address up-to-date and then failed to do so. Thus, the key question is whether Dragomirescu received his initial notice to appear containing those address advisals. If he did, his failure to receive the subsequent notice of hearing after failing to update his address is on him, not the agency.

The answer to that question is yes. Although he argues otherwise, the record shows that Dragomirescu received the notice to appear DHS sent him in January 2016. DHS sent the notice by regular mail to Dragomirescu's then-current address in Marietta, Georgia. The immigration courts apply a "presumption of receipt to a Notice to Appear . . . sent by regular mail when the notice was properly addressed and mailed according to normal office procedures." In re M-R-A-, 24 I&N Dec. 665, 673 (BIA 2008). The Board applied that presumption in this case, finding that this "evidence show[ed] that the respondent received his [notice to appear] which informed him of the necessity of informing the Court if his address changed." We find no error—and certainly no abuse of discretion—in the Board's determination on this point.[5] See Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1340 (11th Cir. 2003) (noting that "[w]e review the denial of a motion to reopen for an abuse of discretion" and that the immigration courts' "findings of fact are conclusive unless a reasonable factfinder would be compelled to conclude to the contrary").

In the agency proceedings, Dragomirescu sought to rebut the presumption that he received his notice to appear. See M-R-A-,

---

[5] Dragomirescu notes that there was a typo in his address on the notice to appear DHS prepared—the agency added a second "r" in the city Dragomirescu lived in, misspelling it "Marrietta." The Board found it appropriate to apply a presumption of delivery notwithstanding the extra "r." The Board did not abuse its discretion in doing so. We also think the errant consonant would not have confused the postman.

24 I&N Dec. at 673–74 (noting that an alien may seek to rebut the presumption that he received a notice sent by regular mail to the correct address with an affidavit or other evidence). Dragomirescu noted that he acted diligently in moving to reopen his removal proceedings after he learned of his in absentia removal and that he "had every incentive" to "attend court" and challenge his removability—factors that, under the Board's precedents, weigh against the presumption of delivery. *See id.* (providing that, "[i]n determining whether a respondent has rebutted" the presumption of delivery of a notice sent by regular mail, the immigration court "may consider a variety of factors, including . . . the respondent's actions upon learning of the in absentia order, and whether due diligence was exercised"). The Board found these arguments unpersuasive, weighing more heavily the fact that Dragomirescu "did not submit an affidavit from either himself or friends which would serve to rebut the presumption of delivery." We cannot conclude that this determination was an abuse of discretion either. Thus, we do not disturb the agency's conclusion that Dragomirescu received the notice to appear that advised him of his obligation to keep his address up-to-date. The record supports that finding.

After Dragomirescu received his notice to appear at his then-current address in Marietta, there is no dispute that he later moved and failed to inform DHS of his new address—which is why he failed to receive the notice of hearing the immigration court later sent to the same address. Because Dragomirescu "failed to provide

the address required under section 1229(a)(1)(F)," he was properly ordered removed under the in absentia statute's exception clause. 8 U.S.C. § 1229a(b)(5)(B).  Dragomirescu has provided no grounds to reopen his removal proceedings.

**PETITION DENIED.**