[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13164

_____

MARTHA ISABEL ROSALES-MENDEZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A078-319-827

_____

2                    Opinion of the Court                    22-13164

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This petition for review requires us to decide whether immigration officials must give notice of a removal hearing to an alien who provided them an inaccurate home address. After border patrol agents apprehended Martha Isabel Rosales-Mendez for illegally entering the United States, they served her with a notice to appear for a removal hearing on a date and time "to be set." The agents asked Rosales-Mendez for an address where she could be reached in the United States. Because Rosales-Mendez was planning to reside with her boyfriend, she had him provide the agents an address over the phone. The agents recorded that address on the notice to appear. But the address contained an error. So when agents mailed a second notice to that address setting the date and time of Rosales-Mendez's removal hearing, Rosales-Mendez did not receive it. When Rosales-Mendez missed the hearing, the immigration judge ordered her removed in absentia. Rosales-Mendez learned about the removal order years later and moved to reopen the removal proceeding for lack of notice. The immigration judge denied the motion, and the Board of Immigration Appeals affirmed. Because Rosales-Mendez failed to provide a correct address at which she could be reached, the officials were excused from providing her notice of her removal hearing. We deny the petition.

## I. BACKGROUND

Martha Isabel Rosales-Mendez, a native and citizen of Honduras, crossed the Rio Grande into the United States without inspection nearly 24 years ago. The day after her illegal entry, border patrol agents caught her trying to board a flight to Houston. Her final destination was Miami, where she planned to live with her then-boyfriend. Agents detained Rosales-Mendez overnight at an immigrant processing center, but they released her the next day on her own recognizance because the facility was at maximum capacity.

Before releasing Rosales-Mendez, a border patrol agent served her with a document titled "Notice to Appear." The notice charged Rosales-Mendez as removable for being an alien present in the United States without admission or parole, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and it ordered her to appear for removal proceedings before an immigration judge in Miami on a date "to be set" at a time "to be set."

The notice to appear also listed the address that Rosales-Mendez was "currently residing at" as "7570 38th Street Miami Florida 33155." Because Rosales-Mendez did not know her boyfriend's address, she allowed border patrol agents to call her boyfriend, who then provided the address to the agents. But the address her boyfriend gave the agents contained a critical error: it was missing the directional designation "SW." And without that designation, Rosales-Mendez explains, mail would not reach her boyfriend's home in Miami, but would instead go to an address in Miami Beach.

The notice to appear cautioned that future communications would be mailed to the listed address; directed Rosales-Mendez to "notify the Immigration Court immediately" if she "change[s] [her] address . . . during the course of this proceeding"; and warned that if she fails to update her address "and do[es] not otherwise provide an address at which [she] may be reached during proceedings, then the Government shall not be required to provide [her] with written notice of [her removal] hearing" and the immigration judge may order her removed "in [her] absence" if she fails to appear. Rosales-Mendez signed and recorded her fingerprint on the notice to appear, certifying that the notice was personally served on her and that she was provided oral notice in Spanish of "the consequences of failure to appear" for her removal hearing. Rosales-Mendez never sought to correct the error in her listed address.

Seven months later, immigration officials mailed a second notice, titled "Notice of Hearing in Removal Proceedings," to the address listed on Rosales-Mendez's notice to appear. The notice of hearing scheduled Rosales-Mendez's removal hearing for April 20, 2001, at 9:00 a.m. Rosales-Mendez never received the notice of hearing, presumably due to the error in the address on file, and Rosales-Mendez did not show up for her removal hearing. The immigration judge proceeded with the removal hearing, found "removability established as charged," and ordered Rosales-Mendez removed to Honduras in absentia. *See id.* § 1229a(b)(5)(A) (providing for in absentia removal).

Sixteen years after being ordered removed, Rosales-Mendez filed a motion to reopen her removal proceedings "based on lack of notice." *See id.* § 1229a(b)(5)(C)(ii) (motion to reopen may be "filed at any time" if the alien did not receive proper notice of removal proceedings). She argued that the initial notice to appear was invalid under the Immigration and Nationality Act because it did not include the date and time of her removal hearing; that she never received the later notice of hearing that set the date and time because "[t]he address [her then-boyfriend] provided [the border patrol agents] was inaccurate"; and that she did not learn that she had been ordered removed until "many years" after the fact. The government responded that Rosales-Mendez "was on notice of the address" listed on the notice to appear and that "[i]t was her obligation to supply the correct address if necessary, yet, she never attempted to do so."

The immigration judge denied Rosales-Mendez's motion to reopen her removal proceedings and her motion to reconsider that denial. Rosales-Mendez appealed to the Board of Immigration Appeals, which dismissed the appeal. The Board ruled that the government provided Rosales-Mendez with proper notice of her removal hearing and that, even if the government's notice were inadequate, Rosales-Mendez "waived her statutory right to notice" of her removal hearing by providing, through her boyfriend, an incorrect address and not correcting it.

## II. STANDARDS OF REVIEW

When a petitioner challenges a decision of the Board of Immigration Appeals that does not "expressly adopt" the immigration judge's decision, this Court reviews "only" the Board's decision. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). We review the denial of a motion to reopen removal proceedings for abuse of discretion. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007). We review legal conclusions underlying the denial *de novo*. *Id.* And we review factual findings under the "highly deferential substantial evidence test," which permits reversal only if "the record compels" a different result. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc).

## III. DISCUSSION

The Immigration and Nationality Act provides "an intricate set of procedures" for removing illegal aliens from the United States. *Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1354 (11th Cir. 2022). The Act generally affords aliens "a right to notice" of their removal proceedings, and it "contemplates two distinct types of written notice to aliens who are subject to removal." *Id.*

The first type of notice is the "notice to appear," 8 U.S.C. § 1229(a)(1), sometimes called "paragraph (1) notice," *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022) (internal quotation marks omitted). The notice to appear is "[a]kin to a charging document" and must be provided to the alien "in every removal case." *Dragomirescu*, 44 F.4th at 1354. Paragraph (1) of section 1229(a) outlines the requirements for a valid notice to appear: it must include the "charges against the alien"; the

"time and place" of the alien's removal hearing; the "require-ment[s] that the alien must immediately provide (or have pro-vided) the Attorney General with a written record of an address . . . at which the alien may be contacted respecting [removal] proceed-ings" as well as "a written record of any change of the alien's ad-dress"; a warning that "failure to provide" the required address ex-cuses the government from its obligation to provide the alien no-tice of the hearing; and a warning that failing to appear for removal proceedings may result in removal in absentia. 8 U.S.C. § 1229(a)(1); *see id.* § 1229a(b)(5)(A)–(B).

The second type of notice is the "notice of hearing," *Drago-mirescu*, 44 F.4th at 1355; *see* 8 U.S.C. § 1229(a)(2), sometimes called "paragraph (2) notice," *Dacostagomez-Aguilar*, 40 F.4th at 1315 (in-ternal quotation marks omitted). The notice of hearing is a "sim-pler" notice, *Dragomirescu*, 44 F.4th at 1354–55, and is required only if the date, time, or location of the alien's removal hearing has been "change[d] or postpone[d]," *see* 8 U.S.C. § 1229(a)(2). Paragraph (2) of section 1229(a) outlines the requirements for a valid notice of hearing: it must include "the new time or place of the [removal] proceedings" and a warning that failing to appear may result in re-moval in absentia. 8 U.S.C. § 1229(a)(2)(A); *see id.* § 1229a(b)(5)(A).

Although an alien "has the right to attend his removal hearing and plead his case if he wishes," *Dragomirescu*, 44 F.4th at 1355 (cit-ing 8 U.S.C. § 1229a(b)(2)(A)(ii), (b)(4)), he is not obligated to do so. The immigration judge can order the alien removed in absentia so long as the government proves by clear and convincing evidence

that it provided the alien with the "written notice required under paragraph (1) or (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(A).

But the removal statute includes an "exception clause." *Dragomirescu*, 44 F.4th at 1355. "No written notice shall be required" for in absentia removal "if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title." 8 U.S.C. § 1229a(b)(5)(B). Section 1229(a)(1)(F) requires that an "alien must immediately provide (or have provided) the Attorney General with a written record of an address . . . at which the alien may be contacted respecting [removal] proceedings," *id*. § 1229(a)(1)(F)(i), and that an "alien must provide the Attorney General immediately with a written record of any change of the alien's address," *id*. § 1229(a)(1)(F)(ii). If an alien who was ordered removed in absentia did not receive proper notice of his removal hearing, he may file a motion to reopen his removal proceedings "at any time" and have the removal order rescinded. *Id*. § 1229a(b)(5)(C)(ii).

Rosales-Mendez argues that these provisions entitle her to rescission of her removal order because the government failed to provide her lawful notice of her removal hearing under either paragraph (1) or paragraph (2). *See* 8 U.S.C. § 1229(a)(1), (2). The government does not meaningfully dispute that its notices were invalid under those provisions, but it argues that it was *exempt* from providing notice altogether under the exception clause. *See id*. § 1229a(b)(5)(B). We agree with the government.

The exception clause relieves the government of its obligation to provide an alien notice of removal proceedings "if the alien has

failed to provide the address required under section 1229(a)(1)(F)," *id.*, which means "a written record of an address . . . at which the alien may be contacted respecting [removal] proceedings" and "a written record of any change of the alien's address," *id.* § 1229(a)(1)(F)(i)-(ii). Implementing regulations clarify that the alien's obligation to provide the government with her address includes the obligation to correct any *errors* in the address listed on her notice to appear: "if the address on the . . . Notice to Appear is incorrect, the alien must provide to the Immigration Court . . . a written notice of an address . . . at which the alien can be contacted." 8 C.F.R. § 1003.15(d)(1).

The exception clause plainly excuses the government from providing Rosales-Mendez notice of her removal hearing. Rosales-Mendez's boyfriend provided officials an erroneous home address at Rosales-Mendez's direction. And Rosales-Mendez failed to correct that error later. Rosales-Mendez "failed to provide the address required under section 1229(a)(1)(F)," and the government was excused from any obligation to provide Rosales-Mendez with notice of her hearing. 8 U.S.C. § 1229a(b)(5)(B).

We have never addressed in a published decision whether the exception clause excuses notice when an alien provides the government an *erroneous* home address and fails to correct it. But we have held the clause applicable on similar facts—when the alien initially provided an accurate address but then moved and failed to provide the new address. *See Dragomirescu*, 44 F.4th at 1358. In *Dragomirescu*, agents served the alien with a putative notice to appear at his then-

current home address. *Id.* at 1352. The notice charged the alien as removable; stated that his removal hearing would be held at a time and place "to be set"; informed him of his obligation to keep his address up to date; and warned him that, if he failed to keep his address current, the government would not be required to provide him notice of his hearing and he may be removed in absentia. *Id.* at 1352–53. The alien later moved but failed to apprise the government of his new address. *Id.* at 1353. When the government mailed a notice to the alien's old address scheduling the alien's removal hearing, the alien did not receive it, and he was removed in absentia. *Id.*

We denied the petition for review because the exception clause excused the notice requirement:

> Putting it all together, and in plainer terms, here is what the exception clause says: an alien who does not receive notice of the time and place of his removal hearing after he moves and fails to send [the government] his new address can be removed in absentia, as long as he at least received the initial notice to appear advising him of his obligation to keep his address up-to-date and the consequences of failing to do so.

*Id.* at 1355–56; *accord Dacostagomez-Aguilar*, 40 F.4th at 1319 ("'[N]o written notice' is 'required' before removing an alien in absentia if the alien moved and failed to provide the government with his new address." (quoting 8 U.S.C. § 1229a(b)(5)(B))).

The same reasoning applies here. Rosales-Mendez's putative notice to appear, which the government personally served on her,

notified her that her address on file with the government was "7570 38th Street Miami Florida 33155"; that later notices "w[ould] be mailed to this address"; that she had a continuing obligation to provide the government an address "at which [she] may be reached" during removal proceedings; and that, if she failed to fulfill that obligation, "the Government shall not be required to provide [her] with written notice of [her] hearing" and "a removal order may be made by the immigration judge in [her] absence." By failing to correct her address after being apprised of her obligation to do so, Rosales-Mendez forfeited her right to actual notice of her removal hearing. *See Dragomirescu*, 44 F.4th at 1355–56; *see also, e.g.*, *Nivelo Cardenas v. Garland*, 70 F.4th 232, 238–39 (5th Cir. 2023) ("[I]f an alien fails to provide a correct mailing address, including failure to correct an erroneous address, he [i]s not entitled to actual notice of his removal hearing." (citation and internal quotation marks omitted)).

Rosales-Mendez argues that we may not address whether the exception clause applies because the Board never considered that issue. But we disagree. The Board did address the issue. It ruled that by failing to "correct" the "inaccurate" address listed on the notice to appear, Rosales-Mendez "waived her statutory right to notice of the April 20, 2001, hearing."

Rosales-Mendez also argues that the exception clause is inapplicable when "the noncitizen did provide *some* address, albeit one with a clerical error." But the governing statute says otherwise: it excuses notice when the alien does not provide an address "at

which the alien may be contacted" about removal proceedings. *See* 8 U.S.C. §§ 1229(a)(1)(F)(i), 1229a(b)(5)(B). If a clerical error in the alien's address means that the alien cannot be "contacted" there, no notice is required. *Id.* As Rosales-Mendez admits, the missing "SW" direction designation from the address listed on her notice to appear would cause mail to be sent to a different location where she *could not be contacted*.

Rosales-Mendez suggests that the exception clause's application is limited to the facts that this Court faced in *Dragomirescu*, where the alien had initially provided a correct address, but then moved elsewhere and failed to provide an updated address. 44 F.4th at 1352–53. But that limitation cannot be squared with the statutory text, which addresses *Dragomirescu*'s circumstances in a separate provision. Section 1229(a)(1)(F)(i) imposes "[t]he requirement that the alien must . . . provide . . . an address . . . at which the alien may be contacted respecting [removal] proceedings." But section 1229(a)(1)(F)(ii)—the very next provision—separately imposes "[t]he requirement that the alien must provide . . . any *change* of the alien's address." (Emphasis added.) Rosales-Mendez's interpretation of section 1229(a)(1)(F)(i) would render section 1229(a)(1)(F)(ii) superfluous. And interpretive canons counsel against that result. *See United States v. Forey-Quintero*, 626 F.3d 1323, 1327 (11th Cir. 2010) (explaining that the canon against surplusage is a "basic premise of statutory construction" (citation and internal quotation marks omitted)); *see also United States v. Dupree*, 57 F.4th 1269, 1278 (11th Cir. 2023) (en banc) (explaining that the presumption that different statutory terms carry different meanings "applies

with particular force" when the terms are "in close proximity" to one another (citation and internal quotation marks omitted)).

Last, Rosales-Mendez argues that the notice exception does not apply because the government cannot prove that she, through her boyfriend, *provided* the wrong address; it is "far more likely," she says, that the agent *recorded* it incorrectly. The Board found that Rosales-Mendez's boyfriend provided an incorrect address. We are bound by that factual finding unless "the record *compels* a reversal." *Adefemi*, 386 F.3d at 1027 (emphasis added).

The record supports the finding that Rosales-Mendez, through her boyfriend, provided an incorrect address: Rosales-Mendez attested in an affidavit that she "believe[s] [that her] boyfriend directly provided the address to the officers"; Rosales-Mendez's arrest report states that the "physical address was retrieved by contacting" Rosales-Mendez's boyfriend at the number Rosales-Mendez provided; and Rosales-Mendez signed the notice to appear with the erroneous address listed as her current residence, *see Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir. 2005) (explaining that one who signs a written contract cannot "avoid the obligation" by asserting "ignorance" of its contents (citation and internal quotation marks omitted)). And Rosales-Mendez equivocated before the immigration judge that the address was either "provided wrong by [her then-boyfriend] or written down wrong by the immigration officers."

In any event, the burden is on the *alien* to correct any errors in her address of record. The implementing regulation states that if

the address on the notice to appear is "incorrect, *the alien* must provide to the Immigration Court . . . a written notice of an address and telephone number at which the alien can be contacted." 8 C.F.R. § 1003.15(d)(1) (emphasis added); *see Dominguez v. U.S. Att'y Gen.*, 284 F.3d 1258, 1260 (11th Cir. 2002) (stating, in a case involving an alien's failure to update her address after moving, that the "*alien* has an affirmative duty to provide the government with a correct address" (emphasis added)). The putative notice to appear also notified Rosales-Mendez that *she* was obligated to keep her address up-to-date and ensure that the government has an address where she may be reached. Neither the regulation nor the notice limits that duty to instances where the mistake is the alien's own. Other circuits too have declined to impose such a limitation. *See, e.g.*, *Nivelo-Cardenas*, 70 F.4th at 244 ("Even if the error were due to fault by the immigration officer, [the alien] was obligated to correct that address pursuant to Sections 1229(a)(1)(F)(i)-(ii) and 1229a(b)(5)(B)."). Because Rosales-Mendez was required to, but did not, provide the government with an address where she could be reached, she was not entitled to notice of her removal hearing. Rosales-Mendez was properly ordered removed in absentia.

## IV. CONCLUSION

We **DENY** Rosales-Mendez's petition for review.