[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12967

Non-Argument Calendar

_____

ANA GRISELA RIVERA-ESTRADA,
MOISES AIREL MARTINEZ-RIVERA,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A201-521-892

_____

Before JORDAN, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Ana Grisela Rivera-Estrada and her minor son, Moises A. Martinez-Rivera, petition us to review the Board of Immigration Appeals's ("BIA") order dismissing the Immigration Judge's denial of their motion to reopen and rescind an *in absentia* order of removal. For the reasons stated below, we deny the petition.

## I.    BACKGROUND

On or about November 14, 2018, the Petitioners, both natives and citizens of Honduras, unlawfully entered the United States at an unknown location in Texas. Shortly after this entry, the Petitioners were detained by immigration officers with the United States Department of Homeland Security ("DHS"). While Rivera-Estrada was in custody, she was personally served with a NTA on December 2, 2018. The NTA charged Rivera-Estrada as inadmissible under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(i)(I), as an immigrant who at the time of admission did not possess a valid visa or other entry documents, and under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without admission or parole.

The NTA specifically warned Rivera-Estrada that, if she failed to appear before an Immigration Judge "at the time and place . . . later directed by the Immigration Court, a removal order may be made by the immigration judge in [her] absence." The NTA

further directed Rivera-Estrada that she was required to provide DHS, in writing, with her full mailing address and telephone number and required to "notify the Immigration Court and [DHS] immediately by using Form EOIR-33 whenever [she] change[d her] address or telephone number during the course of this proceeding." The NTA stated that Rivera-Estrada was provided with an oral translation of this warning in Spanish. (*Id.*) While the NTA ordered her to appear before an Immigration Judge in Pearsall, Texas, it indicated that the date and time of Rivera-Estrada's removal hearing was "TBD" or "To Be Determined."

The Petitioners were released from detention on their own recognizance. At the time of release, Rivera-Estrada informed DHS that her mailing address would be "1322 BRIARWOOD RD NE, Apt 11, ATLANTA, GEORGIA, 30319" ("the Briarwood address").[1] A DHS officer certified that Rivera-Estrada was provided an EOIR-33 form and notified that she must inform the Immigration Court of any further change of address. (*Id.*). Based on the Petitioners' relocation to Georgia, on June 15, 2019, a "Memorandum of Change in Hearing Location" was sent by mail to the Briarwood address with a written notification that the removal hearing would be held before an Immigration Judge in Atlanta, Georgia, and that their NTA was being filed in that Immigration Court. The following month, on July 12, 2019, the NTA was filed by DHS with the Immigration Court in Atlanta.

---

[1] The record contains references to both Apt. 11 and Apt. F-11 throughout.

On November 22, 2019, the Immigration Court sent Rivera-Estrada a written Notice of Hearing ("NOH"), informing her that her removal hearing was scheduled for 8 A.M. on December 9, 2019, and would be held in the Immigration Court located at "401 W PEACHTREE ST, SUITE 2600 ATLANTA, GA 30308." This NOH warned that, if her address was not correct on the NTA, she was required to provide the Immigration Court with her new address, using Form EOIR-33. It also indicated that EOIR-33 was attached, but this form does not appear in the record.[2] This NOH was mailed to Rivera-Estrada at her Briarwood address.

On December 9, 2019, the Immigration Judge issued an order noting that Rivera-Estrada had failed to appear at the hearing, and no exceptional circumstances were shown for the failure to appear, and thus the court conducted the hearing *in absentia*. Immigration Judge determined that DHS had submitted documentary evidence relating to Rivera-Estrada that established the truth of the factual allegations contained in the NTA, and thus the court found removability established as charged and ordered Rivera-Estrada removed to Honduras.

---

[2] Two copies of Immigration and Customs Enforcement "Form I-830E" appear in the record. These forms, titled "NOTICE TO EOIR: ALIEN ADDRESS," are both dated June 15, 2019, and both provide Rivera-Estrada's Briarwood address. But as described above, a DHS officer certified that Rivera-Estrada received an EOIR-33 form.

## II.    STANDARDS OF REVIEW

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the Immigration Judge's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). When the BIA agrees with the Immigration Judge's reasoning, we will also review the Immigration Judge's decision to that extent. *Id.*

We review the denial of a motion to reopen an immigration proceeding for an abuse of discretion, under which we will only determine whether the BIA exercised its discretion arbitrarily or capriciously. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009); *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008). However, the BIA's legal determinations and interpretations of law or statutes are reviewed *de novo*. *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006).

## III.    ANALYSIS

The Immigration and Nationality Act ("INA") provides that an Immigration Judge shall conduct proceedings to determine whether a noncitizen is removable from the United States. INA § 240(a)(1), 8 U.S.C. § 1229a(a)(1). The initiation of removal proceedings is governed by INA § 239, 8 U.S.C. § 1229, which provides that the noncitizen must be served with a notice to appear ("NTA") specifying, among other things, the requirement that the noncitizen provide an address and telephone contact information, the consequences of failing to appear for the removal hearing, and the time and place where the proceedings will be held. INA § 239(a)(1)(F)–(G), 8 U.S.C. § 1229(a)(1)(F)-(G). A noncitizen is required to

"immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1229a of this title." INA § 239(a)(1)(F)(i); 8 U.S.C. § 1229(a)(1)(F)(i).

The Immigration Judge shall order removed *in absentia* a noncitizen who fails to attend a removal hearing "after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, . . . if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable." INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A). An *in absentia* removal order may be rescinded upon a motion to reopen: (i) filed within 180 days, "if the alien shows that the failure to appear was because of exceptional circumstances"; or (ii) "filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title." INA § 240(b)(5)(C)(i)-(ii), 8 U.S.C. § 1229a(b)(5)(C)(i)-(ii).

In *Pereira v. Sessions*, the Supreme Court considered a question "at the intersection of" INA § 239(a), 8 U.S.C. § 1229(a), regarding the contents of a NTA, and the "stop-time" rule for cancellation of removal in INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1), which provides that the period of an alien's continuous physical presence in the United States ends upon service of a NTA. 585 U.S. 198, 201-02 (2018). The Court in *Pereira* concluded that a putative NTA that does not specify either the time or place of the removal

proceedings "is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule." *Id.* at 202.

In *Niz-Chavez v. Garland*, the Supreme Court held that a NTA sufficient to trigger the stop-time rule is a single document containing all the information required by INA § 239(a)(1), 8 U.S.C. § 1229(a)(1). 593 U.S. 155, 170 (2021). It rejected the government's position that it could trigger the stop-time rule by piecemeal serving a deficient NTA, which lacked the time and place of the hearing, and then "complete" the NTA with a later notice of hearing ("NOH") that supplied the missing information. *Id.* at 159-60, 168-72.

In *Dacostagomez-Aguilar v. Att'y Gen.*, we determined that "[t]he notice required to render an in absentia removal order lawful is the notice for the particular hearing that was missed," and therefore, to rescind such an order, "a movant must show that he failed to receive the notice for the hearing at which he was ordered removed." 40 F.4th 1312, 1314 (11th Cir. 2022). In that case, the petitioner was served with a NTA that failed to specify the day and time of his removal hearing, as the NTA indicated that his removal proceedings would occur before the Phoenix Immigration Court at a date and time "to be set." *Id.* The petitioner's mother provided an address to immigration authorities, but the family moved and never provided an updated address. *Id.* The immigration court sent a NOH and then, after transferring the petitioner's case to another immigration court, the new immigration court sent a new NOH, which was returned undelivered. *Id.* The court postponed

proceedings and sent another new NOH, which was again returned undelivered. *Id.* The court then held the noticed hearing. *Id.* The petitioner did not attend, and an Immigration Judge ordered his removal *in absentia*. *Id.* at 1314-15. The petitioner, 14 years later, moved to reopen his case and rescind the order, arguing that rescission was appropriate under INA § 240(b)(5)(C)(ii) because the deficient NTA meant that he "did not receive notice in accordance with paragraph (1) or (2) of § 1229(a)." *Id.* at 1315. The Immigration Judge denied the motion, and the BIA affirmed, reasoning that rescission was not required if a written notice of the hearing was provided either in a NTA under § 1229(a)(1) or in a later NOH under § 1229(a)(2). *Id.*

We denied the petition for review, concluding that the "or" in § 1229a(b)(5)(C)(ii) should be given its usual disjunctive meaning. *Id.* at 1316. We explained that the requirement of notice under "paragraph (1) or (2)" provided alternatives, stating that "the government must show that one notice or the other was provided—not both—to support an in absentia removal order." *Id.* at 1317. We also explained that the statutory scheme required a single notice to remove a noncitizen *in absentia*, and that the two notices covered different situations, as the NTA informed the noncitizen of the initial proceedings, and a NOH was issued later, if the time or place of the proceedings changed. *Id.* We stated:

> Which kind of notice is required—notice under paragraph (1) or paragraph (2)—is thus tied to the nature of the hearing. For the original hearing, the

> government must provide a paragraph (1) notice to
> appear. But for any rescheduled hearing or additional
> hearing to follow, paragraph (2) notice becomes nec-
> essary.

*Id.* We reasoned that reading the statute conjunctively would lead to the "absurd result" of rescinding a removal order issued "after a perfectly noticed hearing because an alien did not receive notice of an earlier hearing at which he was not ordered removed." *Id.* at 1319.

Applying our interpretation to the facts before us, in *Dacostagomez-Aguilar*, we noted that the petitioner's NTA was deficient for lacking an initial hearing time, but "that notice was not the one for the hearing he missed," as his removal proceedings were rescheduled twice, and notices under § 1229(a)(2) were sent to the petitioner's last known address. *Id.* at 1318-19. But because the petitioner never updated his address, and § 1229(a)(2)(B) provides that no notice is required in that situation, the government satisfied its notice obligations under § 1229(a)(2) and the petitioner could not rescind the order. *Id.* at 1319.

Recently, the U.S. Supreme Court in *Campos-Chaves v. Garland*, 144 S. Ct. 1637, 1643 (2024), addressed "what it means 'to demonstrate[e] that the alien did not receive notice in accordance with paragraph (1) or (2),'" as required by § 1229a(b)(5)(C)(ii). The Court noted that an *in absentia* removal order may be rescinded if the noncitizen demonstrates one of several scenarios, including, in relevant part, that he did not receive notice in accordance with

§ 1229(a)(1) or § 1229(a)(2). *Id.* at 1644.  The Court explained that it consolidated three cases brought by noncitizens who moved for recission on the ground that they did not receive proper notice, and that the key details were the same in each case. *Id.*  Specifically, the government failed to provide a single-document NTA, but eventually provided each noncitizen with a notice specifying the time and place of the removal hearing. *Id.*  When each noncitizen failed to show up for the removal hearing, the Immigration Judge entered an *in absentia* order, and each noncitizen subsequently sought recission under § 1229a(b)(5)(C)(ii). *Id.*  The Immigration Judge and BIA refused to reopen the proceedings, and each noncitizen filed a petition for review, two of which were granted by the Ninth Circuit, and one of which was denied by the Fifth Circuit. *Id.*

After noting that the word "or" is "almost always disjunctive," the Court determined that the statutory context did not overcome this ordinary meaning. *Id.* at 1647.  The Court then held that, on any reading, § 1229a(b)(5)(A), which sets out the preconditions for an alien to be removed in the first place, "does not require *both* paragraphs (1) and (2) notice before an alien can be removed *in absentia*. It requires only one." *Id.* (emphasis in original).  The Court further concluded that, in § 1229a(b)(5)(C)(ii), "notice in accordance with paragraph (1) or (2)" refers to the notice for the hearing that the noncitizen missed and at which he was ordered removed. *Id.* at 1648-49.  The Court held that a noncitizen "can have his in absentia removal order rescinded under § 1229a(b)(5)(C)(ii) only if he can demonstrate that he 'did not receive' a paragraph (1) notice *or* a paragraph (2) notice—whichever corresponds to the hearing at

which he was ordered removed in absentia." *Id.* at 1647 (emphasis in original). Applying this interpretation to the facts of each of the petitioners' cases, the Court determined that, because none of the noncitizens received a NTA compliant with § 1229(a)(1), the case turned on whether they received "notice in accordance with paragraph . . . (2)," citing to § 1229a(b)(5)(ii). *Id.* at 1649. The Court determined that each of the petitioners did, in that the NOHs all provided the new time or place of the proceedings and the consequences of failing to attend such proceedings. *Id.* The Court stated that those times were all "new," in that those notices were the first time any of the noncitizens were informed when those specific hearings would take place, and that those notices were for the hearings that they missed at which they were ordered removed. *Id.*

Shortly after the Supreme Court's decision in *Campos-Chaves*, we addressed in *Rosales-Mendez v. U.S. Att'y Gen.*, 104 F.4th 1271, 1272 (11th Cir. 2024), whether immigration officials must give a notice of a removal hearing to a noncitizen who provided them an inaccurate home address. Rosales-Mendez, a native and citizen of Honduras, crossed the Rio Grande into the United States without inspection and, the day after, was seized by border patrol agents while trying to board a flight to Houston. *Id.* at 1272-73. She was released the next day on her own recognizance, but before being released, a border patrol agent served her with a NTA, charging her as removable for being a noncitizen present in the United States without admission or parole, and ordered her to appear for removal proceedings before an Immigration Judge in Miami on a date "to be set" at a time "to be set." *Id.* at 1273. The

NTA listed an address in Miami, which Rosales-Mendez's boyfriend had provided to border patrol agents over the phone because Rosales-Mendez did not know it. *Id.* However, this address contained a "critical error" in that it was missing a "SW" directional designation, meaning mail would not reach Rosales-Mendez's boyfriend's house, where she would be residing, but would instead go to an address in Miami Beach. *Id.* The NTA warned that it was Rosales-Mendez's burden to notify the Immigration Court of any change of address, and that she could be removed, in her absence, if she failed to appear. *Id.* Rosales-Mendez signed the NTA and certified that she was provided oral notice in Spanish of the consequences of failure to appear for her removal hearing. *Id.* Rosales-Mendez did not seek to correct the error in her listed address. *Id.* Seven months later, immigration officials mailed a NOH to the address listed on her NTA, but having not received this notice, Rosales-Mendez did not attend her removal hearing. *Id.* Therefore, the Immigration Judge removed Rosales-Mendez *in absentia* to Honduras. *Id.* Rosales-Mendez, 16 years after being ordered removed, then filed a motion to reopen her removal proceedings based on lack of notice, and the Immigration Judge denied this motion, as well as her motion to reconsider the denial. *Id.* at 1273-74. The BIA then dismissed her appeal, determining that the government provided her with proper notice, and that, even if the notice had been inadequate, she had "waived her statutory right to notice" of her removal hearing by providing, through her boyfriend, an incorrect address and not correcting it. *Id.* at 1274.

After reviewing the difference between the NTA, namely, the "paragraph (1) notice," and the NOH, namely, the "paragraph (2) notice," we reiterated that the Immigration Judge can order a noncitizen removed *in absentia* so long as the government proves by clear and convincing evidence that it provided the noncitizen with the written notice required under paragraph (1) or (2) of § 1229(a). *Id.* at 1274-75. We determined that, while the government did not meaningfully dispute that its notices were invalid under either § 1229(a)(1) or § 1229(a)(2), we also concluded that the "exception clause" in 8 U.S.C. § 1229(a)(1)(F) relieved the government of its obligation to provide Rosales-Mendez notice of her removal hearing because her boyfriend provided officials with an erroneous home address at her direction, and she failed to correct that error later. *Id.* at 1275. We therefore concluded that she failed to provide the address required under § 1229(a)(1)(F). *Id.* Further, while Rosales-Mendez suggested that the exception clause's application was limited to the facts in *Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1354 (11th Cir. 2022), namely, where the noncitizen had initially provided the correct address but then moved elsewhere and failed to provide an updated address, we rejected this argument. *Id.* at 1277.

Here, as a threshold matter, we conclude that Rivera-Estrada did not receive proper notice of her removal hearing. As in *Campos-Chaves*, the government failed to provide Rivera-Estrada a single-document compliant NTA, but eventually sent a NOH specifying the time and place of the removal hearing. 144 S. Ct. at 1644. As the Supreme Court held, a noncitizen can have her *in absentia*

removal order rescinded if she can demonstrate that she did not receive the notice that corresponds to the hearing at which she was ordered removed *in absentia*. *Campos-Chaves*, 144 S. Ct. at 1647. And here unlike the petitioners in *Campos-Chaves*, Rivera-Estrada received only her initial NTA, as her subsequent NOH was sent to the incorrect address. *Campos-Chaves*, 144 S. Ct. at 1647. This is in line with this Court's precedent in *Dacostagomez-Aguilar*, where we held that the petitioner's NTA was deficient, but "that notice was not the one for the hearing he missed," as his removal proceedings were rescheduled twice and notices under § 1229(a)(2) were sent to his last known address. 40 F.4th at 1318-19. While this Court held in *Dacostagomez-Aguilar* that an "original hearing" required a "paragraph (1) notice," that is, a NTA, *Campos-Chaves* makes clear that, where the petitioner did not receive a compliant NTA under § 1229(a)(1), but later receives a NOH that is compliant with § 1229(a)(2), then that is sufficient notice even for the first removal hearing. *Campos-Chaves*, 144 S. Ct. at 1649; *Dacostagomez-Aguilar*, 40 F.4th at 1317. Because Rivera-Estrada therefore did not receive a compliant NTA, and further never received the later NOH, she had no actual notice of her removal hearing at which she was ordered removed *in absentia*. But this is not the end of our inquiry.

As with *Dacostagomez-Aguilar* and this Court's more recent case, *Rosales-Mendez*, we conclude that Rivera-Estrada failed to update her address and thus provided the Immigration Court with an incorrect address on file. *Rosalez-Mendez*, 104 F.4th at 1272-73; *Dacostagomez-Aguilar*, 40 F.4th at 1319. While Rivera-Estrada contends that she notified the DHS of her new address in October 2019, she

failed to update the Immigration Court, though her NTA specifically directed her to do so.  Rivera-Estrada's argument that her in person notice to a DHS officer of her new address was sufficient to notify the Immigration Court is similarly misplaced, as the NTA specifically notified her that any address change must utilize the Form EOIR-33, and that this notice must go to the immigration court.  The NTA also provides that Rivera-Estrada was provided a Spanish oral translation of this information.  While Rivera-Estrada contends that she complied with her other reporting requirements, and that she had updated DHS with her address, rather than the Immigration Court, this does not obviate her of her burden, as articulated by the NTA with which she was served in person, to update her address with the immigration court.

Thus, while Rivera-Estrada did not receive actual notice of her removal hearing, as her NTA provided no date or time, and the NOH was sent to an incorrect address, we conclude that the government was ultimately relieved of its burden to provide notice because Rivera-Estrada failed to update her address with the Immigration Court.  *See Rosales-Mendez*, 104 F.4th at 1273-74.

**PETITION DENIED.**